IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JUAN VEGA, JR.                                                                                    PLAINTIFF

           v.                        Civil No. 03-5216

NURSE SUE MCDONALD; JONELLE
O'DELL, Substitute Nurse; SHERIFF KEITH
FERGUSON; DEPUTY FALKENBERRY;
and DEPUTY McLESTER                                                                       DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Juan Vega, Jr., currently an inmate of the Arkansas Department of Correction, brings this pro se civil rights action under 42 U.S.C. § 1983. Vega contends his constitutional rights were violated while he was detained at the Benton County Detention Center.

On May 5, 2005, the defendants filed a motion for summary judgment (Docs. 23-25), as directed by the court (Doc. 20). By order entered on May 17, 2005, Vega was directed to complete, sign, date, and return an attached questionnaire that would serve as his response to the summary judgment motion. (Doc. 26.) On June 3, 2005, plaintiff's response (Doc. 28) to the defendant's summary judgment motion was filed. The summary judgment motion is currently before the undersigned for issuance of this report and recommendation.

### I. Background

According to his complaint (Doc. 1), addenda (Docs. 6-8, 17), and response (Doc. 28), the plaintiff contends that some defendants were deliberately indifferent to his serious medical needs, that he was denied access to the detention center trustee program and other benefits such as recreational time and clergy visits due to his pending charges, and that he was discriminated

against in the medical treatment he received due to his race.

Vega was booked into the Benton County Detention Center (BCDC) on or about August 17, 2003. In medical forms dated August 25, August 28, and September 1, 2003, Vega complained about dry skin on his feet. (Doc. 28 at ¶ 2.) This complaints were forwarded to the nurse, and Vega was seen by two members of the medical staff. (Doc. 28 at ¶ 3.) When he was seen by medical staff, they examined his feet and informed Vega that the medical staff did not dispense lotion as a medication at the BCDC. (Doc. 28 at ¶ 3.) Vega contends that because the medical staff refused to provide him with lotion for his feet, he suffered from dry feet and "couldnt [sic] walk for some days because [his] feet would bleead [sic]." (Doc. 28 at ¶ 5.) Vega also described his condition as causing "severe pain and nominal bleeding." (Doc. 17 at ¶ 4.)

Vega also contends that he was discriminated against due to his charges as a "sex offender" in that he was denied the opportunity to participate in the trustee program at the BCDC. (Doc. 17 at ¶ 10.) Vega states that Deputy Falkenberry was directly responsible for denying him the opportunity to participate in the trustee program, but also notes that as Falkenberry's decision was BCDC policy, everyone from Falkenberry to Sheriff Ferguson was responsible. (Doc. 17 at ¶ 11.) The BCDC does not allow inmates or detainees who have been classified as "sex offenders" to serve as trustees. (Doc. 28 at ¶ 7.) The defendants contend that this policy is in place because of the risk sex offender detainees face from other inmates or detainees. (Doc. 23 at ¶ 4.) The defendants further contend that the BCDC distributes games, newspapers, and the like on a regular, equal basis without regard to offenses for which the inmates or detainees are held. (Doc. 23 at ¶ 5.) In response to these contentions, the plaintiff indicates that he is without knowledge to agree or disagree with those assertions. (Doc. 29 at

AO72A
(Rev. 8/82)

¶¶ 8-9.) Vega also alleges that Deputy Falkenberry told visiting ministers to "pick another barracks" because the sex offenders were hopeless cases. (Doc. 17 at ¶ 12.)

Vega claims that defendant nurse Sue McDonald discriminated against him because of his race, Hispanic, when "she refused to write the same order (med. sheet) for me that she had written for other "white" inmates [he knew] of in [his] barracks (D-149)." (Doc. 17 at ¶ 5.) Although asked to provide the names of all of the white inmates who received preferential treatment, the plaintiff lists only his cell mate, Erik Dark, as the "other 'white' inmates." (Doc. 28 at ¶ 10A.) Vega claims that Dark told Vega he was suffering from dry skin, that McDonald had provided the medical order for Dark's dry skin, and that this was racially motivated because Dark was given the medical sheet for dry skin and Vega was refused the medical sheet. (Doc. 28 at ¶¶ 10B-E.)

## II. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir.1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient

AO72A
(Rev. 8/82)

evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d 607 *(citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III. Discussion

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. "To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must show [1] a deprivation [under color of law] of [2] a right, privilege, or immunity secured by the Constitution or the laws of the United States." *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). "[T]o establish a violation of constitutional rights under § 1983, the plaintiff must prove that the defendant's unconstitutional action was the 'cause in fact' of the plaintiff's injury." *Butler v. Dowd*, 979 F.2d 661, 669 (8th Cir. 1992).

**Deliberate Indifference to Serious Medical Needs**

The plaintiff argues that he had a serious medical need in that he was suffering from dry skin on his feet and that the defendants were deliberately indifferent to that serious medical need. In this case, the plaintiff was a pretrial detainee when this alleged violation occurred. Thus, his claims are more properly analyzed under the due process clause of the Fourteenth Amendment than the Eighth Amendment. *Hartsfield v. Colburn*, 371 F.3d 454, 456-457 (8th Cir. 2004). "The standard to be applied in assessing a pretrial detainee's claim of due process violations . . . is not entirely clear." *Spencer v. Knapheide Truck Equipment Co.*, 183 F.3d 902, 906 (8th Cir. 1999)(citation omitted). Nevertheless, "[t]he Supreme Court has held that pretrial detainees are

AO72A
(Rev. 8/82)

entitled under the Fourteenth Amendment to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment." *Id.* (*quoting City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983).

In the absence of a clearly binding standard, the Eighth Circuit in analyzing inadequate medical care claims brought by pretrial detainees has applied the Eighth Amendment's deliberate indifference standard. *See e.g., Hartsfield*, 371 F.3d at 456-457; *Spencer,* 183 F.3d at 905-06; *Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994) (analyzing a pretrial detainee's claim of inadequate medical care under the deliberate indifference standard). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) ("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

AO72A
(Rev. 8/82)

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

First, the condition that Vega suffered from does not constitute a serious medical need. Vega had dry skin on his feet which led to cracking and "nominal bleeding." Vega contends that his pain was severe and that he could not walk some days, however he does not state how many days he could not walk, nor does he provide any evidence, other than his own assertion, of the

-6-

severity of his condition. Dry skin as a medical condition simply does not constitute a serious medical need. *See e.g., May v. Baldwin*, 895 F. Supp. 1398, 1408 (D. Or. 1995) (dry skin problem not a serious medical need); *Landfair v. Sheahan*, 878 F. Supp. 1106, 1113 (N.D. Ill.1995) (finding that athlete's foot does not present any significant risk of serious injury or death).

Second, even if the dry skin was considered a serious medical need, Vega admits that he saw two members of the medical staff who examined his feet and told him that they did not dispense lotion to prisoners. To the extent that Vega disagrees with those medical determinations, such a claim, as explained above, does not rise to the level of a constitutional violation. *See May*, 895 F. Supp. at 1407-08 (no constitutional violation where inmate complained about dry skin and foot problems where he was examined twice by medical officers who determined there was no need for treatment and recommended drinking more water). The defendants' motion for summary judgment on plaintiff's claim of deliberate indifference should be granted.

**Discrimination Due to Sex Offender Charges**

The plaintiff contends that he was subjected to discriminatory actions because he was being charged as a sex offender. Specifically, he claims that sex offenders were denied access to the trustee program and were given second-hand games and other materials. Plaintiff further claims that Deputy Falkenberry discouraged ministers from visiting the sex offenders.

Defendants should be granted summary judgment on Vega's claim that denying him access to the trustee program because he was being charged as a sex offender violated his

AO72A
(Rev. 8/82)

constitutional rights. As an equal protection claim, sex offenders are not one of the suspect classifications set forth by the Supreme Court, and therefore review of the county's decision is whether there is a rational reason for denying sex offenders the opportunity to serve as trustees. *See Doe v. Moore*, 410 F.3d 1337, 1346 (11th Cir. 2005). The defendants state that the BCDC policy is to not allow those charged with sexual offenses to serve as trustees out of concern for the safety of those inmates. *See Mahfouz v. Lockhart*, 826 F.2d 791, 794 (8th Cir. 1987) (no equal protection clause violation where state distinguishes sex offenders as a group from other inmates and excludes them from work release program). Further, the other claims of differential treatment, such as not receiving games first-hand, are not so severe as to raise constitutional concerns, and Vega does not challenge the defendants statement that the BCDC distributes games, newspapers, and the like on a regular, equal basis without regard to offenses for which the inmates or detainees are held.

As for Vega's claim that Deputy Falkenberry discouraged ministers from visiting with those detained on Vega's cellblock because they were sexual offenders, and thus hopeless cases is belied by the fact that Vega admits in his other pending case before this court, *Vega v. Tharp*, Civil No. 03-5266, that he was given numerous opportunities to attend church services while he was detained that the BCDC, except while he was serving time in lock down. Therefore, even if Deputy Falkenberry did make such comments, it does not appear that Vega suffered any injury as a result of the comments. Defendants should be granted summary judgment on this claim.

**Discrimination Due to Race**

Finally, Vega claims that he was subjected to racial discrimination because the medical

AO72A
(Rev. 8/82)

staff provided lotion for treatment of dry skin to his cell mate, Erik Dark, who is white, while denying such treatment to Vega, who is Hispanic. Vega stated in his addendum that nurse McDonald had "refused to write the same order (med. sheet) for me that she had written for other 'white' inmates I know of in my barracks (D-149)." In his summary judgment response, Vega was asked to provide the names of the "other 'white' inmates." The only name he provided was that of Erik Dark, his cell mate. Also, Vega states that the decision to provide Dark the lotion while denying it to him was racially motivated because "Erik Dark had been given a med sheet for his dry skin and [Vega] was refuse[d]."

Prisoners and detainees are protected under the Fourteenth Amendment from invidious discrimination based on race. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). A prisoner who asserts an equal protection claim, however, must prove the existence of purposeful discrimination.

While Vega's allegation is sufficient to state an equal protection claim, *see Powells v. Minnehaha County Sheriff Dept.*, 198 F.3d 711, 712 (8th Cir. 1999), it is insufficient to prove that the differences in treatment that Vega received from his cell mate was due to racial animus. Vega merely concludes that because his cell mate was provided lotion and Vega was not, that McDonald must have discriminated based on his race. This single incident of different treatment does not prove racial discrimination or an equal protection violation. *See Weiler v. Purkett*, 137 F.3d 1047, 1051 -1052 (8th Cir. 1998) (few individual examples of unequal treatment are "insufficient to provide more than minimal support to an inference of classwide purposeful discrimination"), *quoting Inmates of Neb. Penal and Correctional Complex v. Greenholtz,* 567

AO72A
(Rev. 8/82)

F.2d 1368, 1381 (8th Cir.1977). Vega has not provided sufficient evidence to support his claim of racial discrimination.

## IV. Conclusion

Therefore, I recommend that defendants' motion for summary judgment be granted and that this case be dismissed with prejudice.

**The parties have ten days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of November 2005.

          **/s/ Beverly Stites Jones**
_____
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)